United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERIC MOSS,<br>        Plaintiff,<br>    v.<br>R. DIXON, et al.,<br>        Defendants. | Case No. 11-cv-04706-WHO (PR)<br><br>**ORDER GRANTING DEFENDANTS'**<br>**MOTION FOR SUMMARY**<br>**JUDGMENT** |

## INTRODUCTION

Plaintiff Eric Moss alleges that while he was incarcerated at San Quentin State Prison, his jailers were deliberately indifferent to his serious medical needs when they failed to assign him to a lower bunk to accommodate his back problems and other medical conditions. As a result, he fell from the upper bunk to which he was assigned and sustained injuries. But as defendants argue in their motion for summary judgment, Moss failed to exhaust his claims through the prison's administrative grievance process. While Moss does not dispute that he failed to exhaust, he asserts that exhaustion is excused because of the prison's tardy processing of his grievances. His failure to exhaust cannot be excused and defendants' motion for summary judgment is GRANTED.

# DISCUSSION

## I. Background

The allegations in the Second Amended Complaint are taken as true. Moss arrived at San Quentin Prison on April 6, 2010. He gave the staff medical instructions that he should be assigned a lower bunk because of his back injuries and other medical conditions (a "lower bunk chrono") from the medical staff at La Palma Correctional Center in Arizona, his prior place of incarceration. (*Id.* at 33, 34.) This lower bunk chrono was noted on a medical intake form created by Correctional Officer Dixon, but Dixon failed to otherwise inform San Quentin's custody staff about it. (*Id.* at 14.) Moss was assigned to an upper bunk. Defendant Correctional Officer Valdez-Ramirez was aware of the lower bunk chrono but failed to arrange for Moss to have a lower bunk. (*Id.* at 10, 16.)

Moss fell from his upper bunk on April 26, 2010. He suffered injuries to his spine that required him to undergo surgery. (*Id.* at 16, 34.) He now suffers from severe neuropathy in his legs and feet and from other debilitating conditions, all of which "have caused a complete diminished capacity for employability." (*Id.* at 34.)

Moss filed several grievances while at San Quentin. None request relief from his assignment to a top bunk. None was fully exhausted. Two mention the lower bunk chrono. The first is dated April 17, 2010, before he fell. It was not reviewed until July 20, 2010. Moss did not seek further review. The other is dated December 14, 2010. This claim was denied because it was untimely. Moss resubmitted it on January 4, 2011. It was denied for the same reason. He did not seek further review.

Moss filed suit on September 21, 2011. He was paroled from the California Department of Corrections and Rehabilitation (CDCR) on October 17, 2011.

## II. Motion for Summary Judgment on Grounds of Exhaustion

Defendants assert that Moss failed to exhaust his administrative remedies prior to filing this federal civil rights action. Defendants have properly raised this issue through a motion for summary judgment, *Albino v. Baca*, 747 F.3d 1162 (9th Cir. 2014) (en banc), and have given Moss the required warnings about opposing such a motion (Docket

No. 58).

### A.   Summary Judgment Standard

Summary judgment is proper where the pleadings, discovery and affidavits demonstrate that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. On an issue for which the opposing party by contrast will have the burden of proof at trial the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

The court is only concerned with disputes over material facts and "factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. It is not the task of the court to scour the record in search of a genuine issue of triable fact. *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying, with reasonable particularity, the evidence that precludes summary judgment. *Id.* If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323.

### B.   Exhaustion Standard

Prisoners must exhaust properly their administrative remedies before filing suit in federal court. "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are

3

exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory and is no longer left to the discretion of the district court. *Woodford v. Ngo*, 548 U.S. 81, 84 (2006) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)).

The State of California provides its prisoners the right to appeal administratively "any policy, decision, action, condition, or omission by the [CDCR] or its staff that the inmate . . . can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." 15 C.C.R. § 3084.1(a). In order to exhaust available administrative remedies within this system, a prisoner must proceed through several levels of appeal: (1) informal review, submitted on a CDC 602 inmate appeal form; (2) first formal level appeal, to an institution appeals coordinator; (3) second formal level appeal, to the institution warden; and (4) third formal level appeal, to the Director of the CDCR. *See* 15 C.C.R. § 3084.7; *Brodheim v. Cry*, 584 F.3d 1262, 1264–65 (9th Cir. 2009). A final decision from the Director's level of review satisfies the exhaustion requirement under § 1997e(a). *Harvey v. Jordan*, 605 F.3d 681, 683 (9th Cir. 2010).

### C. Moss's Use of the Exhaustion Process

Defendants have presented evidence regarding the ten inmate grievances (eight medical and two non-medical) that Moss filed during his time at San Quentin.[1] I have reviewed each of them. In the two non-medical grievances, Moss did not raise any issues relevant to this action. He did not pursue the grievances beyond the first level of review on those claims, leaving them unexhausted. (Mot. for Sum. J. ("MSJ"), Davis Decl. ¶¶ 9–10).[2]

Nor were his medical grievances exhausted. (MSJ, Zamora Decl. ¶¶ 7–14.) Two of the eight medical grievances raise issues relevant to this action. In the first (SQ HC

---

[1] In his second amended complaint, Moss refers to a prison grievance he filed at the prison where he was held prior to his transfer to San Quentin. (Second Am. Compl. at 4.) Because this grievance necessarily concerns matters occurring before his fall at (and transfer to) San Quentin, it cannot serve to exhaust his administrative remedies as to the issues raised in the instant action.
[2] As evidence, defendants rely on declarations filed with a previously filed motion to dismiss. The Davis declaration can be found at Docket No. 28 and the Zamora declaration, referred to later, is found at Docket No. 29.

4

11016327), filed on April 19, 2010 (before his injury), he mentioned that his lower bunk chrono was being ignored. (*Id.* ¶ 7, Ex. B at 5.) This grievance was not pursued beyond the first level of review. (*Id.* ¶ 7.)[3] The second grievance (SQ HC 11018169) did address the April 26, 2010 fall. (*Id.* ¶ 14, Ex. I at 4.) However, it was submitted on December 14, 2010. This grievance was screened out because it was late. Moss resubmitted it on January 4, 2014, and it was again screened out. Moss did not pursue further review of either the original or resubmitted grievance. (*Id.* ¶ 14.)

None of the other six medical grievances raised issues relevant to this action. None of them were pursued to the third level of review, and therefore were not exhausted. (*Id.* ¶¶ 7–14.)

Moss admits that he did not exhaust his administrative remedies, (Pl.'s Opp. to MSJ (Docket No. 62) at 4–5) but contends that he could not exhaust because defendants unreasonably delayed processing his grievances. He does not explain why he did not or could not continue to pursue his remedies after the alleged delays. For example, Moss cites a July 20, 2010 response to his April 19, 2010 grievance in which he referred to his placement in administrative segregation and to his lower bunk chrono. (Opp. at 4.) Despite that tardy response, there is no reason to believe that Moss could not have pursued his grievance through the remaining exhaustion process, and Moss does not explain why he did not do so.

Moss mistakenly points to a November 5, 2010 letter from the prison, which he alleges was a response to an April 2010 grievance regarding his lower bunk chrono. (Opp. at 5.) This response, he asserts, was so late that it rendered exhaustion impossible. But the November 5th letter has nothing to do with his April 2010 grievance. It relates to another grievance through which Moss sought dental care, and provides no support to his argument concerning the defendants' delay. (MSJ, Zamora Decl. ¶ 9.)

---

[3] Even if this grievance had been exhausted, since it was filed before the injury it is doubtful that it could serve to exhaust a grievance about the injury.

1    Moss attached the November 5th letter and an April 19, 2010 grievance to a new
2    grievance filed on December 14, 2010.  This new grievance raised concerns about his
3    placement in administrative segregation and his fall in April 2010.  It was screened out
4    because it was filed late, more than seven months after the events, rather than within the 15
5    days required by the regulations.  (MSJ, Zamora Decl., Ex. I at 5-7, 9, 19-20.)  Moss does
6    not explain why he filed this grievance so late or why he did not exhaust it.

7    Exhaustion is mandatory.  Even if I construed the April 19, 2010 grievance as
8    sufficient to give notice for the claim Moss now presents (which would be quite a stretch,
9    since he had not been injured as of that date), and assuming the defendants' delay between
10   April 19 and July 20, 2010 was unreasonable, there is still no excuse for Moss's failure to
11   exhaust the grievance procedure thereafter.  There was plenty of time.  The December 14,
12   2010 grievance was far too late; moreover, it was never exhausted. Moss failed to exhaust
13   his administrative remedies prior to filing suit and has not shown that he was unable to
14   exhaust the grievance procedure.  He has not shown that the exhaustion requirement
15   should be excused.  As a result, defendants' motion for summary judgment is GRANTED.

## CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment is GRANTED.  Defendants are entitled to judgment as a matter of law as to all claims.  The Clerk shall terminate Docket No. 57, enter judgment in favor of all defendants as to all claims, and close the file.

**IT IS SO ORDERED.**

**Dated:** October 10, 2014

WILLIAM H. ORRICK
United States District Judge

6